**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Rose Gonzales, | No. CV-17-00615-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Margaret Rose Gonzales brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises three issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by rejecting a treating physician opinion and instead assigning substantial weight to the state agency physician opinions; 2) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony; and 3) the ALJ erred by rejecting the opinion of Plaintiff's treating psychiatric counselor and instead giving significant weight to the state agency psychological examiner. (Doc. 16).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 24, 25, & 28). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that this matter should be remanded for an award of benefits.

## I. Procedural History

Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income on May 14, 2014. (Administrative Record ("AR") 68). Plaintiff alleged disability beginning on July 11, 2013 based on fibromyalgia, depression, anxiety, and sleep disorder. (AR 68). Plaintiff's application was denied upon initial review (AR 67) and on reconsideration (AR 87). A hearing was held on August 1, 2016 (AR 31), after which ALJ Charles Davis found, at Step Four, that Plaintiff was not disabled because she could perform her PRW as a supervisor, assistant manager, cashier, and retail clerk. (AR 24). On October 18, 2017 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

Plaintiff's date last insured ("DLI") for DIB purposes is September 30, 2018. (AR 68). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her alleged onset date ("AOD") of July 11, 2013 and her DLI of September 30, 2018.

## II. Factual History[1]

Plaintiff was born on August 9, 1972, making her 40 years old at the AOD of her disability. (AR 99). She has a GED and past relevant work as a cashier, stocker, assistant manager, and customer service supervisor. (AR 247, 308).

### A. Treating Physicians

On July 10, 2013 Plaintiff injured her back stacking boxes at work. (AR 367). She had some improvement[2] but then on September 19, 2013 she reported worsening pain, no improvement from medication, and felt worse after PT.[3] (AR 346).

A MRI of the lumbar spine on September 12, 2013 showed small focal central

---

[1] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to Plaintiff's claims on appeal.

[2] See AR 353 (feeling better, improved with PT but some relapses); AR 355 (less pain and improvement with medication and PT); AR 357 (pain worse); AR 359 (symptoms not better but improvement with medication); AR 361 (improvement with medication and PT); AR 363 (symptoms worse, no improvement from medication or PT); AR 365 (less pain, good pain control with medication and PT).

[3] See AR 372–46 (PT records from Concentra)

posterior disc protrusion at L4-5 and bilateral facet hypertrophy at L3-4. L4-5, and L5-S1. (AR 371). A MRI of the cervical spine on December 10, 2013 showed mild diffuse disc bulge at C5-6 and mild straightening of the cervical lordosis without listhesis. (AR 487). A MRI of the lumbar spine that same date showed left foraminal disc protrusion and annular fissure at L2-3 and L3-4, degenerative disc disease at L4-5, and multilevel mild facet arthropathy. (AR 489).

Plaintiff was seen at Tucson Orthopedic Institute from January to May 2014. (AR 475–516). At her initial consultation on January 21, 2014 Plaintiff reported neck and back pain, worse with activity and after working more than four hours. (AR 589). At her new patient visit on February 14, 2014 Plaintiff stated her whole back hurt, her hands and arms go numb all the way down to her feet, and her hands and feet tingle. (AR 511). On exam Plaintiff was uncomfortable, had normal mood and affect, and positive SLR on the right. (AR 513). Dr. Brailsford-Gorman suspected injury due to overuse and recommended PT and Voltaren gel. (AR 515). She further opined that Plaintiff's condition would not be permanently disabling but that it would take about a month to get treatments and evaluations done, and that she would recommend work restrictions. On May 2, 2014 Plaintiff reported neck pain radiating to the head, back pain and spasms, trouble sleeping, and fatigue. (AR 475). On exam Plaintiff was uncomfortable, had difficulty going from sitting to standing, was tearful, and had multiple trigger points. (AR 477). Dr. Brailsford-Gorman noted Plaintiff's presentation was more typical for chronic pain syndrome like fibromyalgia and recommended Plaintiff see her PCP, Dr. Baker. (AR 478).

Dr. Brailsford-Gorman also completed several work status reports. (AR 518–29). On the last report on May 2, 2014 she opined that Plaintiff was unable to work for the month of May but could then return to work if released by her PCP, but would need intermittent days off. (AR 519–20). Dr. Brailsford-Gorman also noted Plaintiff's condition would cause flare-ups and she would be unable to function, causing her to be absent from work one day a week. (AR 522).

Plaintiff was seen at Ideal Physical Therapy in March and April 2014 and had some

improvement but also reported continued pain. (AR 448–70). At her last appointment on April 8, 2014 she reported only being able to work four hours of her eight hour shift due to pain. (AR 448). Her current pain was 8/10, 5/10 best, and 10/10 worst. The therapist noted that "despite aggressive attempts to deactivate the pain spasm cycle in this patient with many different techniques, therapy has not been able to impact this patient's pain." (AR 449). The therapist recommended Plaintiff stop PT and that she be sent for a pain management consult.

Plaintiff saw her PCP Dr. Baker on May 29, 2014 and reported no relief from Vicodin and Gabapentin; her pain is all over and she can't get anything done. (AR 608). Plaintiff was positive for dysphoric mood and decreased concentration, myalgias and arthralgias, and negative for back pain, nervousness, and anxiety. (AR 609). On exam she was oriented x3, distressed, had labile affect, tangential speech, and agitated. (AR 609– 610). Dr. Baker assessed fibromyalgia and prescribed Cymbalta. (AR 610). On July 10, 2014 Plaintiff reported medication initially helped then stopped working, and PT did not help her pain. (AR 605). On exam she had pain and spasm in the shoulders and back, and her mood, affect, and behavior were normal. (AR 606–607). On September 10, 2014 Plaintiff reported her pain medications were not working. (AR 602). On exam she had diffuse muscle tenderness, normal behavior, judgment, and thought content, and blunt affect. (AR 604).

On July 10, 2014 Dr. Baker completed a Medical Assessment of Ability to do Work Related Activities. (AR 530). She opined Plaintiff could sit for 20 minutes at a time and less than one hour total in a work day, could stand/walk for three hours, should change from standing to walking every 20 minutes, could occasionally lift up to five pounds, frequently carry five pounds, never crawl, and occasionally stoop, squat, climb, and reach. (AR 530–31). Dr. Baker further opined Plaintiff had a moderately severe limitation in her activities due to pain and fatigue. (AR 532).

Plaintiff received mental health services at La Frontera from February 2014 to July 2016. At an assessment on February 21, 2014 Plaintiff reported anxiety, stress,

nervousness, frustration, and poor sleep and appetite. (AR 776). On July 14, 2014 she reported increased sadness, crying, anger, and isolation, and that her Cymbalta stopped working. (AR 536). Cymbalta was increased and Plaintiff was referred for 1:1 therapy. (AR 537–38). At an annual assessment on July 6, 2015 Plaintiff reported experiencing symptoms of anxiety, depression, and stress seven days a week. (AR 977). Progress notes reflect increased sadness, crying, anger, anxiety, stress, and isolating (AR 673, 678, 688, 694, 822, 904, 910, 1013); sleep was poor (AR 673, 678, 682); oriented x3, appropriate affect, and good insight, judgment, and concentration (AR 537, 679, 680, 684, 689, 695, 699, 705, 985, 989); and Plaintiff was doing okay or well, improving, and making progress (AR 683, 699, 783, 789, 791, 793, 795, 797, 809, 892, 894, 916, 922, 926, 944, 966, 968, 974, 988).

On August 28, 2014 Plaintiff's counselor, Janet San Nicholas, completed a RFC assessment and opined that Plaintiff had moderate limitations in her ability to interact appropriately with the public and supervisors and marked limitations in her ability to understand, remember, and carry out short, simple instructions, understand and remember detailed instructions, make simple work-related decisions, interact with co-workers, respond to pressures in a work setting, and respond to changes in a work setting. (AR 541). San Nicholas also opined that Plaintiff would be off-task more than 30%, absent from work more than 5 days a month, unable to complete a work day more than 5 days per month, and would perform at less than 50% efficiency compared to an average worker. (AR 542). San Nicholas noted that Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder and that the symptoms made it impossible for her to sustain work, that she had maybe one good day a week where she could minimally function, and that her physical pain exacerbated her mental health symptoms.

Plaintiff was seen at Arizona Endocrine and Rheumatology Associates for her thyroid. At various follow-ups from 2013–2016 she was observed to be alert and oriented with normal mood and affect and to have normal muscle strength and normal gait. (AR 553, 554, 558, 560, 582, 598, 617, 618, 620, 622, 624, 626, 628, 632, 757, 760, 762, 764,

766, 768).

On September 17, 2015 Plaintiff saw Dr. Baker and reported she went to the ER because she was shaking uncontrollably from stress. (AR 734). On exam she was oriented x3, had anxious mood, affect labile and inappropriate, slurred speech, agitated, and inappropriate judgment. (AR 736). Dr. Baker opined that she was malingering, purposely stuttering and shaking when she walked but then when she was distracted with a question the stuttering went away. (AR 737). She recommended Plaintiff follow-up with her psychiatrist because Plaintiff was taking two of the same medication and it could be causing symptom exacerbation. (AR 738). La Frontera later documented that Plaintiff was overstimulated with the addition of Bupropion to her medications. (AR 1016).

At a physical on October 20, 2015 Plaintiff had a normal musculoskeletal exam and was oriented x3 with blunt affect, delayed speech, paranoid thought content, impaired cognition and memory, and nervous/anxious. (AR 741–42).

Plaintiff was seen at Desert Pain and Rehabilitation Specialists from May 2015 to June 2016. At her initial evaluation on May 12, 2105 Plaintiff reported severe overall body pain, focused in the right shoulder and low back. (AR 1070). She tried multiple medications and trigger point injections with no relief. (AR 1070–71). Plaintiff reported her current pain was 10/10, 8/10 at best, and 9/10 average. (AR 1071). PA-C Seidel opined that her pain scores were exaggerated, noting "I do not doubt that the patient feels that she's having the maximum amount of pain. However she [has] not been to an emergency room. Physical examination does permit palpation of muscle spasms and free motion of her joint complexes without vocalization, guarding or retraction." (AR 1071). PA-C Seidel further noted Plaintiff held tightly to her husband's arm coming in but walked freely out of the exam room, and that he did not believe Plaintiff was aware of her behavior or deliberately malingering, but that the "exaggeration may indicate a possible psychological overlay." On exam Plaintiff had 18/18 tender points in the precise locations of the fibromyalgia indicators. (AR 1072). The assessment was fibromyalgia pain, low back pain, right shoulder pain, and muscle spasm, with a recommendation for Gabapentin and a muscle

relaxant, aqua therapy,[4] and trigger point injections.

On June 9, 2015 Plaintiff saw Dr. Farr at Desert Pain and reported average pain 10/10. (AR 1065). He stated that was an exaggeration and it was more 6–7/10. She was not getting good relief from her medications and on exam she had trigger points between her scapulas and painful shoulders to deep palpation. On June 30, 2015 Plaintiff had injections with immediate relief. (AR 1059). On July 7, 2015 Plaintiff reported reasonably good pain control and increased activity, and that the injections helped her upper back but not her lower back. (AR 1062). On August 4, 2015 Plaintiff reported her average pain was 6–7/10 and that she was not getting good relief with her medications; Dr. Farr increased the dosage. (AR 1056–57). On September 1, 2015 Plaintiff stated her pain control was reasonably good and that she had occasional flare-ups that seemed to be related to the weather. (AR 1053). Plaintiff had injections on September 30, 2015 and December 30, 2015 with an immediate decrease in pain. (AR 1043, 1049). On January 4, 2016 Plaintiff stated current pain was 4/10, good days were 4 and bad days 7/10; she had good relief with medication. (AR 1041). On March 1, 2016 Plaintiff reported her current pain control was ok and that the shots were starting to wear off. (AR 1038). On March 29, 2016 Plaintiff had injections and had immediate relief. (AR 1035–36). On March 30, 2016 Plaintiff reported increased stress was adding to her symptoms; pain control and activity were stable. (AR 1034). On April 27, 2016 Plaintiff reported pain was worse and injections did not work. (AR 1031). On May 22, 2016 Plaintiff reported back pain worse and increased stress; the last set of injections in her back were not effective; pain control and activity were fair. (AR 1030). On June 22, 2016 Plaintiff reported pain all over, average 6/10, and that she did well with the last set of injections in her neck; pain control and activity were fair. (AR 1029). Plaintiff had another set of injections on June 24, 2016 and got immediate relief. (AR 1026).

B.    Examining Physicians

On February 4, 2015 Plaintiff saw Dr. Marks for a psychological examination. She reported that her moods were not as extreme with medication, but that anxiety and worry

---

[4] *See* AR 1090–1091 (PT evaluation summary)

were worse when her pain was more intense; three days per week her muscles lock up and she has debilitating pain and her depression rises markedly. (AR 728–29). On a good day she can drive, go to the grocery store, wash dishes, cook, and shower and dress herself. (AR 729). On bad days she is in bed all day and sometimes it takes a week for the symptoms to subside. (AR 730). Dr. Marks observed Plaintiff was extremely slow in standing up and depended on her significant other for support, her mood was stable with mild evidence of depression and anxiety, and she was cooperative with the exam. Dr. Marks assessed mood disorder secondary to chronic pain and noted that:

> This claimant appeared to be in a very high level of pain that has not yet been medically addressed. Her anxiety and depression arise out of pain and co-varies with her level of pain. Yet, the depression and anxiety do not appear to be significant barriers to her considering working, if her pain is ever managed to an effect where she is more capable of engaging in physical activities.

(AR 730). He opined that her psychological limitations would not last 12 months or more. (AR 731).

C.  State Agency Physicians

On initial review, state agency physician Dr. Martha Goodrich found that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand for six hours, sit more than six hours, frequently climb ramps/stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladders/ropes/scaffolds. (AR 74–75). Dr. John Kurtin affirmed these findings on reconsideration. (AR 98). In addition, Plaintiff was found to have mild limitations in ADL, social functioning, and maintaining concentration, persistence, or pace. (AR 95).

D.  Plaintiff's Testimony

On a Disability Report dated May 15, 2014 Plaintiff reported that she stopped working because she ran out of leave time and had too much pain to return to work. (AR 246). On a Function Report dated August 25, 2014 Plaintiff stated that in a typical day she takes her son to school, then comes home and eats, takes pain medication, sleeps, makes dinner, eats, showers, and sleeps. (AR 277–78). Her friend helps with cooking, driving, cleaning, and taking care of the cats. (AR 278). Plaintiff has poor sleep, takes quick

showers due to lack of movement, and shaves on a good day. (AR 278). She prepares simple meals and can do the dishes several times a week, but it takes her about three hours. (AR 279). She cannot do house or yard work, needs help walking when she goes out, and uses a mobile cart at the grocery store. (AR 280). Plaintiff has too much pain to do any hobbies and doesn't want to be around people. (AR 281). Her illness affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (AR 282). She can lift less than five pounds, walk 5-10 minutes, stand 5 minutes, sit 15 minutes, and pay attention for 15 minutes. (AR 282).

On a Disability Report dated September 3, 2014 Plaintiff reported worse pain, that she was unable to shave or comb her hair as often as needed, could not raise her arms above her head, needed to lay down frequently, and had an increase in her depression medication. (AR 286, 289). On a Disability Report dated March 13, 2015 Plaintiff reported constant pain from her shoulders down her arms making her hands go numb, pain down her back, pain in her hips with pain and numbness down her legs, and pain in her wrist, with pain to the point of bed rest. (AR 319). She had problems showering, combing her hair, and brushing her teeth, needed help driving and grocery shopping, and could not clean or cook every day. (AR 321).

At her hearing before the ALJ, Plaintiff testified that she cannot work because she has pain throughout her body from fibromyalgia, her arms go numb, and her neck prevents her from being able to look down and look up. (AR 38–40). She has not tried to work since she was injured on the job because her pain is so severe that she can't get up and go. (AR 40). She can't sit or stand for a certain amount of time, her neck prevents her from staring at the computer, and her arms go numb from using the keyboard. (AR 40).

Plaintiff has tried PT four times and water therapy, but it has not helped her pain. (AR 40–41). Her pain level depends on the day and is worse with rainy and cloudy weather; average daily pain with medication is 7/10; a year ago it was 4–5/10. (AR 42, 52). She referred herself to Desert Pain and has been seen there since early 2015. (AR 47). Plaintiff

currently takes Tizanidine, Tramadol, Gabapentin, and Ibuprofen. (AR 48). She lays down every day due to pain, sometimes for the entire day, and spends her day either lying down or in her recliner. (AR 49). She has gotten worse; a year ago she would only lay down once every two weeks. (AR 50). Plaintiff has gone to the emergency room several times for pain. (AR 52).

Plaintiff reported than in the last year, she doesn't like being around people and is very limited in what she can do. (AR 48, 52). She has feeling of worthlessness and problems with memory and concentration. (AR 53).

Plaintiff testified that until recently, she took care of her granddaughters aged three years and six months. (AR 41). Plaintiff could get up and get the three-year-old a bowl of cereal and then sit back down, and the three-year-old would help her with the baby by getting the diapers. (AR 41). Plaintiff stated she would change the baby and that at one point she could lift her up until she was about four months old, but now the baby is six months and 20 pounds so she can't lift her. (AR 42, 51). Some days even a gallon of milk is too heavy for Plaintiff to lift. (AR 42). When Plaintiff was caring for her grandchildren, her pain and movement weren't as severe; for the past three months she's been able to do less and less with the pain and mobility limitations. (AR 46–47).

Plaintiff's son and his girlfriend live with her and do the chores, but Plaintiff prepared simple meals for the grandchildren like sandwiches. (AR 43). Plaintiff cannot do laundry because it's too much to pick up the basket and load the washer; she can load the dishwasher but not unload it because of the bending and reaching; she can dress and bathe herself but has trouble some days; she stopped driving three months ago; she uses a motorized cart to grocery shop; she does not do any activities outside the house. (AR 43–44). Plaintiff could not answer how long she can walk before needing to sit down; she can stand for less than five minutes and then her back locks; she can sit in a reclining chair for 30 minutes and then needs to get up and walk. (AR 46). A year ago she could stand for 15-20 minutes before needing to rest and could hold 10–15 pounds. (AR 50–51).

. . .

E.     Vocational Testimony

At the hearing before the ALJ, Susan L. Creighton-Clavel testified as a vocational expert. (AR 56). The ALJ asked Creighton-Clavel to assume an individual with Plaintiff's age, education, and work history who could lift 20 pounds occasionally, 10 pounds frequently, stand and walk up to eight hours, frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and frequently kneel, stoop, crouch, and crawl. (AR 57). Creighton-Clavel testified such a person could perform Plaintiff's light jobs as a supervisor, assistant manager, cashier, and retail clerk, and could also perform a full range of sedentary work. (AR 56–58). She further stated an individual could miss one day of work per month and still sustain employment. (AR 57).

Plaintiff's attorney asked Creighton-Clavel to assume a person with moderately severe pain who would be off task 11+%. (AR 58). Creighton-Clavel explained that most people are off task 1–3 minutes every 15 minutes and could still maintain the jobs, and that the maximum an employer would tolerate is 12 minutes an hour or 20% off task. (AR 59–61). She further explained that a person cannot stop working for 15 continuous minutes and do nothing, and that a person could not maintain employment if they needed a 9-minute break every hour. (AR 61–62). Plaintiff's attorney then asked if someone could only sit for two hours, stand for three hours, and lift five pounds occasionally, and Creighton-Clavel stated such a person could not have a full-time job. (AR 62–63). If the person needed to lay down several hours a day, that would not be acceptable in the workplace. (AR 64). Further, if a person had marked limitations in understanding and remembering short, simple instructions, making simple work decisions, interacting with coworkers, responding to work pressures, and responding to changes in a routine work setting, it would eliminate Plaintiff's past skilled and semiskilled jobs. (AR 63–64). Finally, if a person has less than 50% efficiency working, that would not be readily acceptable in the workplace. (AR 64).

F.  ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of Grave's disease, degenerative disc disease, obesity, and fibromyalgia. (AR 20). The ALJ found that

Plaintiff's depression was not severe because it caused no more than a minimal limitation on her ability to perform basic mental work activities.[5]

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record for the reasons explained in the decision. (AR 22). The ALJ noted that while he had "no doubt that the claimant experiences the symptoms that she has alleged, her symptoms are not so severe as to prohibit her from performing all basic work activities." (AR 23).

The ALJ gave reduced weight to the work activity report by Dr. Brailsford-Gorman because she last saw Plaintiff in March 2014 and opined that Plaintiff would be able to return to work in one month. (AR 23). The ALJ also gave reduced weight to Dr. Baker's work activity report because she completed her form in July 2014 and indicated Plaintiff could only lift up to five pounds occasionally. (AR 24). The ALJ determined this was inconsistent with Plaintiff's own testimony regarding her childcare activities, which reflected she was capable of much more activity.

The ALJ gave significant weight to consultative examiner Glen Marks's psychological opinion because the treatment records reflected that while Plaintiff's symptoms wax and wane, even at their worst they would not result in more than minimal limitations for at least 12 months. (AR 21). The ALJ also noted that throughout the treatment record Plaintiff was observed to have good eye contact, no evidence of abnormal speech, was calm and cooperative, and had clear, logical, relevant, coherent, and goal-oriented thoughts. The ALJ gave little weight to counselor Janet San Nicholas's opinion because the treatment records did not reflect the severity and ongoing nature as noted by San Nicholas. (AR 21).

---

[5] The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *Id*. The ALJ found Plaintiff had mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation of extended duration.

The ALJ gave substantial weight to the state agency medical and psychological consultants' opinions because they are highly qualified and experts in Social Security Disability evaluation, and their opinions were supported by the treatment record. (AR 24).

The ALJ found that Plaintiff had the RFC to perform light work with modifications for occasionally climbing ropes and scaffolding and frequently climbing ramps and stairs, stooping, kneeling, crouching, and crawling. (AR 21). The ALJ determined Plaintiff could perform her PRW as a supervisor, assistant manager, cashier, and retail clerk. (AR 24). The ALJ therefore concluded Plaintiff was not disabled. (AR 24–25).

### III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

Here, Plaintiff was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. A RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),

- 13 -

1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a

whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Discussion

Plaintiff argues that the ALJ erred by rejecting Dr. Baker's treating physician opinion and instead assigning substantial weight to the state agency reviewing physician opinions. Plaintiff also argues that the ALJ erred by rejecting her treating psychiatric counselor's opinion and instead giving significant weight to the state agency consulting examiner's opinion. Finally, Plaintiff argues that the ALJ failed to give clear and convincing reasons to discount Plaintiff's subjective symptom testimony. Plaintiff requests that the Court reverse and remand this matter for an award of benefits.

The Commissioner argues that the ALJ reasonably weighed the opinions of Plaintiff's treating physician and counselor and that it was reasonable for the ALJ to assign significant weight to the state agency opinions. The Commissioner further argues that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony and that the treatment record does not support Plaintiff's allegations regarding the severity of her physical and mental problems.

The Court finds that the ALJ failed to provide legally sufficient reasons to reject Janet San Nicholas's treating counselor opinion. This error impacted the ALJ's RFC assessment and the hypotheticals posed to the VE. Consequently, the error was not harmless because it ultimately impacted the ALJ's Step Four nondisability finding. The undersigned further finds that, applying the credit as true rule, remand for an award of benefits is appropriate.[6]

---

[6] Because the Court finds that remand for an award of benefits is warranted based on the ALJ's error in rejecting San Nicholas's treating counselor opinion, the Court

1        A. <u>Law</u>

2            In weighing medical source opinions in Social Security cases, the Ninth Circuit

3    distinguishes among three types of physicians: (1) treating physicians, who actually treat

4    the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)

5    non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*,

6    81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the

7    opinion of a treating source than to the opinion of doctors who do not treat the claimant."

8    *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830).

9    "Courts afford the medical opinions of treating physicians superior weight because these

10   physicians are in a better position to know plaintiffs as individuals, and because the

11   continuity of their treatment improves their ability to understand and assess an individual's

12   medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015).

13   "While the opinion of a treating physician is thus entitled to greater weight than that of an

14   examining physician, the opinion of an examining physician is entitled to greater weight

15   than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

16           Where a treating physician's opinion is not contradicted by another physician, it

17   may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. "If a

18   treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

19   may only reject it by providing specific and legitimate reasons that are supported by

20   substantial evidence. This is so because, even when contradicted, a treating or examining

21   physician's opinion is still owed deference and will often be entitled to the greatest weight

22   . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012

23   (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a

24   physician's opinion may include its reliance on a claimant's discredited subjective

25   complaints, inconsistency with the medical records, inconsistency with a claimant's

26   testimony, or inconsistency with a claimant's ADL. *Tommassetti v. Astrue*, 533 F.3d 1035,

27   1041 (9th Cir. 2008). "An ALJ can satisfy the substantial evidence requirement by setting

28   _____

     declines to address the other issues raised by Plaintiff in her appeal.

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, if the ALJ determines that the plaintiff's subjective complaints are not credible, this is a sufficient reason for discounting a physician's opinion that is based on those subjective complaints. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, Plaintiff argues that the ALJ failed to give proper weight to the treating physician opinion of her mental health provider, Licensed Professional Counselor Janet San Nicholas, and Nicholas's supervising psychiatrist, Dr. Wen Cai. While San Nicholas is not considered an acceptable medical source, opinions from other sources must still be evaluated and the ALJ may discount their testimony only by giving reasons germane to each witness. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Only physicians and certain other qualified specialists are considered acceptable medical sources."). Nurse practitioners, physician assistants, and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). Pursuant to SSR 06-03p, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment. . . . However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Thus, as one of Plaintiff's treating providers, San Nicholas qualifies as an "other source" that can provide evidence about the severity of Plaintiff's impairments and how they affect her ability to work, and the ALJ was required to evaluate San Nicholas's opinion and "give[] reasons germane to each witness" for discounting the opinion. *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1513(a). The Court finds that the ALJ failed to meet that

standard here.

B. Analysis

The ALJ gave little weight to San Nicholas's opinion because the treatment records did not reflect the severity and ongoing nature as noted by San Nicholas. (AR 21). In making this finding, the ALJ cited to Exhibit 16F and noted that Plaintiff was observed to have good eye contact, clear, logical, relevant, coherent, and goal oriented thoughts, and was cooperative and calm. The Court finds that this was not a legally sufficient reason to assign little weight to San Nicholas's opinion. Exhibit 16F consists of 250 pages of progress notes from La Frontera spanning two and a half years of appointments. The ALJ failed to cite to any specific record that contradicted San Nicholas's opinion, and the Court cannot meaningfully review the ALJ's reasoning with such a broad citation. While the Commissioner is not required to "discuss *all* evidence[,]" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted).

Further, the ALJ's weight finding ignores Plaintiff's longstanding treatment relationship with San Nicholas in favor of the examining psychologist who only saw Plaintiff one time. *See* 20 C.F.R. § 404.1527(c), (f). If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ must evaluate any medical opinion according to the requirements set out in 20 C.F.R. § 404.1527(c). Thus, in determining what weight to afford San Nicholas's opinion, the ALJ was required to consider (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of San Nicholas's opinion; (3) the consistency of the opinion and the record as a whole; (4) whether Nicholas is a specialist; and (5) other factors that would support or contradict Nicholas's opinion. *See Revels*, 874 F.3d at 665 (ALJ erred by failing to credit nurse practitioner's opinion where nurse was a treating source who examined claimant at least ten times over two years, was in a unique position as a primary

care provider who received reports from specialists and had an overview of claimant's conditions, and opinion was co-signed by an acceptable medical source); *Garrison*, 759 F.3d at 1014 (ALJ erred in assigning little weight to nurse practitioner's opinion "while apparently failing to recognize that those [opinions] were supported by voluminous notes").

In addition, Exhibit 16F reflects that while at times Plaintiff reported she was doing well or her symptoms improved, at other times she had increased stress, anxiety, depression, and anxiousness and poor sleep. While "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider," *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014), the ALJ may not manufacture a conflict by cherry-picking the evidence to support a finding of non-disability. *See Garrison*, 759 F.3d at 1014 (ALJ manufactured a conflict by identifying a few reports of improvement and then asserting, without reference to any other treatment records, that provider's opinion merited little weight). Further, "[i]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment" and "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017. "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Garrison*, 759 F.3d at 1017 ("improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (the fact that a claimant is "responding to treatment . . . does not provide a clear and convincing reason for disregarding" her testimony because "[n]o physician opined that any improvement would allow [her] to return to work."). Taken as a whole, the medical records illustrate Plaintiff's long-term struggle with mental health issues and document that she

1  continued to struggle with the symptoms of her depression, anxiety, and PTSD despite

2  receiving medication and therapy.

3         In sum, the ALJ's conclusory dismissal of San Nicholas's opinion because the

4  treatment records allegedly did not reflect the severity and ongoing nature as noted by San

5  Nicholas is wholly inadequate to meet the required legal standard. Further, the ALJ failed

6  to address the factors set out in 20 C.F.R. § 404.1527(c), particularly the frequency of

7  examination and the length, nature, and extent of the treatment relationship, and the

8  evidence in support of San Nicholas's opinion. This error is not harmless because it

9  affected the ALJ's RFC assessment and the ultimate nondisability finding at Step Four,

10 and it is clear that by crediting San Nicholas's opinion Plaintiff would not have the RFC to

11 perform any work existing in the national economy.[7] Accordingly, the Court finds that

12 remand for an award of benefits is appropriate.

13     **V.    Remedy**

14        A federal court may affirm, modify, reverse, or remand a social security case. 42

15 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's

16 findings, this Court is required to affirm the ALJ's decision. After considering the record

17 as a whole, this Court simply determines whether there is substantial evidence for a

18 reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574

19 F.3d at 690.

20

21        [7] The ALJ did not include any nonexertional limitations in the RFC or hypotheticals
   to the VE. The VE testified that if someone had marked limitations in understanding and
22 remembering short, simple instructions, making simple work decisions, interacting with
   coworkers, responding to work pressures, and responding to changes in a routine work
23 setting, it would eliminate Plaintiff's past skilled and semiskilled jobs. (AR 63–64). The
   VE further testified that if a person had less than 50% efficiency working, that would not
24 be readily acceptable in the workplace (AR 64), and that employers will tolerate one
   absence per month (AR 57). San Nicholas opined that Plaintiff would be off-task more than
25 30% of the workday due to her limitations, that she would be absent more than five days
   per month, that she would be unable to complete an 8-hour workday more than five days
26 per month, and that the symptoms of her anxiety and depression made it impossible for her
   to work at a sustainable job.
27        Thus, when crediting San Nicholas's opinion and the VE's testimony regarding
   marked limitations and efficiency, it is clear that Plaintiff does not have the RFC to perform
28 any work existing in significant numbers in the national economy. *See Garrison*, 759 F.3d
   at 1021 n.28. Accordingly, the undersigned finds that remand for an award of benefits is
   appropriate.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir.1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id*. (citations omitted); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995).

As discussed above, the undersigned finds that the ALJ erred in failing to provide legally sufficient reasons for rejecting San Nicholas's opinion. The undersigned further finds that remand for an award of benefits is appropriate because San Nicholas's opinion regarding work restrictions which would render Plaintiff disabled under the Act establishes that there are no outstanding issues that must be resolved before a determination of Plaintiff's disability can be made because it is clear from the testimony of the VE that the ALJ would be required to find Plaintiff disabled were such evidence credited.

Furthermore, it has been over four years since Plaintiff applied for benefits. While this is not a reason to remand for an award of benefits, the Ninth Circuit has recognized that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Benecke*, 379 F.3d at 595 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988)). Thus, because the ALJ failed to provide legally sufficient reasons for rejecting San Nicholas's opinion, and because all

three factors favoring remand for an award of benefits are satisfied, remanding for further administrative proceedings "would serve no useful purpose and would unnecessarily extend [Plaintiff's] long wait for benefits." *Benecke*, 379 F.3d at 595; *see also Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir. 1999) (where the court "conclude[s] that . . . a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits.").

## VI. Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** remanding this matter for an award of benefits. The Clerk shall enter judgment accordingly and close its file on this matter.

Dated this 20th day of December, 2018.

_____
Eric J. Markovich
United States Magistrate Judge